STROMBERG–CARLSON TELEPHONE MFG. CO. v. SIMMONS.

(District Court, N. D. Georgia. August 29, 1912.)

1. REFORMATION OF INSTRUMENTS (§ 19*)—GROUNDS—MUTUAL MISTAKE.

Where a preliminary contract by which defendant was to execute to complainant a series of notes, some of which were to run a number of years, clearly provided that they should contain a provision making the entire debt due on default in the payment of any note or interest, but such provision was omitted by mutual mistake, complainant is entitled to have the notes reformed by its insertion.

[Ed. Note.—For other cases, see Reformation of Instruments, Cent. Dig. §§ 74–78; Dec. Dig. § 19.*]

2. REFERENCE (§ 99*)—REFERENCE BY CONSENT—FINDINGS OF MASTER.

Where an entire case is referred to a master by consent of the parties, his findings of fact are entitled to the weight of the verdict of a jury.

[Ed. Note.—For other cases, see Reference, Cent. Dig. §§ 148–156; Dec. Dig. § 99.*]

3. ACTION (§ 62*)—PREMATURE COMMENCEMENT—EXTENSION OF DEBT.

Pledges of additional collateral by a debtor after defaults in meeting partial payments *held*, under the evidence, not to have been made under an agreement, express or implied, for an extension of the time of payment, so as to render a suit brought by the creditor several months afterward premature.

[Ed. Note.—For other cases, see Action, Cent. Dig. §§ 718–723; Dec. Dig. § 62.*

Premature commencement of actions, see note to American Bonding & Trust Co. v. Gibson County, 76 C. C. A. 159; City of Trinidad v. Hokasona, 102 C. C. A. 424.]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

In Equity. Suit by the Stromberg-Carlson Telephone Manufacturing Company against C. Jerome Simmons. On exceptions to report of special master. Report confirmed, and decree for complainant.

See, also (C. C.) 185 Fed. 211.

The following is the report of John M. Slaton, special master:

By order of your honor of date April 6, 1911, the above case was referred to me as special master, to make and report my findings in accordance with the terms of said order, which report I herewith submit:

The complainant was engaged in the business of manufacturing telephones, supplies, etc. The respondent was interested in the Atlanta Telephone Company, having been its president. The indebtedness constituting the subject-matter of this litigation was for borrowed money. The bonds, stocks, etc., pertained to the Atlanta Telephone Company.

The complainant filed a bill against the respondent, averring that certain notes executed by him to complainant failed, through error of the scrivener, to contain an acceleration clause making the whole debt due, which clause was intended by both parties, in accordance with a preliminary contract between them, to be included. Further, said bill averred that certain collateral pledged to secure said notes was improperly described therein as "first-mortgage bonds," instead of "gold mortgage bonds." Complainant prayed a reformation of the notes, a decree in its favor for the principal and interest of said notes against said respondent, and a decree for the sale of the security pledged, and for general relief.

The respondent filed an answer admitting the indebtedness, but denied the right of the complainant to reformation as prayed, and claimed that the debt was not due for reasons hereinafter stated. He further charged that inequitable conduct on the part of complainant in preventing him from realizing on the pledged securities should debar the complainant from prevailing in this case.

### Reformation.

The first question is the right of reformation. The whole case centers about a contract dated July 11, 1907 (Rec. p. 20). That contract, made between complainant and respondent, clearly contemplated a pledge of "gold mortgage bonds," and, in fact, the complainant has in its custody as pledged "gold mortgage bonds." Mr. Simmons himself testifies: "Now I knew that the Stromberg-Carlson Company were to have for my debt gold bonds." The evidence shows beyond dispute the right to reformation in this particular.

The contract of July 11, 1907 (Rec. p. 20), provided that the indebtedness should be put in "note form," and that said note should run through a period of 14 years, interest to be paid at certain times, and the principal to be reduced at certain intervals, in default of compliance with which the whole debt should be due. Mr. McCanne, representing complainant, did not prepare the notes until January, 1908. The delay was occasioned by preliminary steps essential to carry out the contract. His testimony is to the effect that he had before him the contract of July 11, 1907, and endeavored to follow it. As a form for guidance, he utilized a blank employed by the trust company with which he dealt. Either his eye overlooked one line in dictating to the stenographer, or the stenographer made the error of omitting from the note the words: "This whole obligation shall immediately become due and payable." This accelerative clause had been inserted at the suggestion of a member of the executive committee of complainant, when the form prepared by Mr. McCanne for a payment of the entire debt in one and two years was modified so as to allow a longer extension. This accelerative feature was fully explained to Mr. Simmons (page 624). The embarrassed condition of the Telephone Company, the long number of years through which the indebtedness was to run, the helpless situation of the complainant without it, all emphasize its importance.

It is true that Mr. McCanne, in following the form of pledge for expressing the contract of July 11, 1907, put into the note the provision, not called for by said contract, that the securities might be sold without notice and

bought in by the pledgee. Also two notes were executed instead of one, which is manifestly immaterial. But, when Mr. McCanne returned the notes to Simmons, he accompanied them with a letter stating: "We now inclose notes prepared for you to execute in accordance with the terms of the preliminary agreement of July 11, 1907." Mr. Simmons says he examined the notes and found the accelerating clause omitted, but thought the change of the notes was intentional. I think that, under the circumstances, Mr. Simmons was estopped from objecting to the reformation of the notes.

Mr. Simmons' recollection about the matter is admittedly hazy, for he testifies, in explanation of his subsequent letters, inconsistent with his knowledge of the omission of the accelerative clause, that he had forgotten about it.

In fact, every letter and document in the case shows an insistence upon the contract of July 11, 1907, and no documentary evidence in the case is consistent with any theory except the presence of the accelerative clause in the notes. Mr. Simmons and his son differ from Messrs. McCanne, Kodclf, Wolf, and Conklin, but every letter from Mr. Simmons, every paper signed by him, every letter to him containing pertinent communications undenied by him, all establish that he believed the complainant had the right to declare the entire debt due.

The circumstances of the case show no laches. The letter to Mr. Simmons containing the notes said they were executed in accordance with the contract of July 11, 1907, and Mr. McCanne had the right to rely on his attention being called by Mr. Simmons to any variance therefrom. Mr. McCanne unintentionally omitted the accelerative clause, and, finding the facts as above stated, I find in favor of the reformation of the notes in that particular.

Did the deposit of other securities operate, under the facts, to postpone the default or to render the suit premature?

Under the contract of July 11, 1907, certain "first-mortgage bonds" were to be exchanged for "gold mortgage bonds," which were to be pledged for the indebtedness of Mr. Simmons to complainant. No payment on the notes, either as interest or in reduction of the principal, was made subsequent to February, 1908. Mr. Simmons was begging for time, explaining the depression in business and loss of telephones by reason of the panic. Being in arrears and being pressed for payment (page 95), Mr. Simmons on October 28, 1908, wrote to Mr. McCanne, representing complainant, suggesting that he take about $80,000 in bonds (which turned out to be $69,000), and which were not covered by the contract of July 11, 1907, and that Mr. McCanne sell them, paying up Simmons' arrearages (page 96). Instead, McCanne took the $69,000 in bonds as additional security (page 97), and made a specific written agreement (pages 101, 102) that said bonds are to be held under the agreement of July 11, 1907, varying only in the provision that more bonds on account of payments shall be returned of the $69,000 lot than of those pledged in the July 11, 1907, agreement.

Mr. Simmons, failing to make any payment on his indebtedness, was visited in Atlanta by Mr. McCanne on February 19, 1909 (page 102), and again Mr. Simmons signed a specific pledge agreement for a deposit of $13,000 more gold bonds (pages 103, 104), expressly providing that they should be held under the contract of July 11, 1907, differing only in the proportionate withdrawals on reductions of the debt.

It will be observed from the original contract of July 11, 1907, respondent was obligated to exchange first-mortgage bonds for gold mortgage bonds, and he had not effected exchange of but about $40,500 of these bonds (see also page 113). Complainant insisted that this should be done (page 119). The unexchanged bonds seemed to have been pledged for indebtedness with some Atlanta creditor. The complainant insisted (page 121) that respondent either pledge with it as additional security the $6,000 of bonds held by him, or that they should be utilized in effecting the exchange of bonds above mentioned. On October 11, 1909, Mr. Simmons adopted the former alternative, and pledged with complainant the $6,000 of bonds under a specific agreement that they should come under the July 11, 1907, agreement. The pledge specifically provided that this pledge of the $6,000 of bonds should be released if the exchange of the bonds named in the pledge were made by Simmons. Otherwise, they should "be held unconditionally."

There are the three deposits of bonds on which respondent claims an implied indulgence which would render the suit premature. In one instance, Mr. Simmons testifies (page 264) that Mr. McCanne did not say "in so many words, 'we will indulge you.'" He said: "'We are indulging you.'"

Doubtless the deposits were made with the hope of indulgence, and McCanne thought such was the hope of Simmons. But McCanne denies any promise of indulgence, and the express terms of the pledge exclude indulgence. In his brief respondent claims a right of indulgence of five years. But the deposit of bonds is followed up to the very date of suit by letters from Mr. Simmons admitting the right of complainant to sue for the entire indebtedness, and negativing the possibility of reliance by respondent on any indulgence. The very last deposit of the $6,000 of bonds was for the purpose expressly of forcing an exchange of bonds as provided by the agreement of July 11, 1907.

I must hold that the deposit of bonds created neither expressly nor impliedly any right of indulgence or extension of time of payment.

### Clipping Coupon Agreement.

The Atlanta Telephone Company had suffered reverses, and was badly in need of rehabilitation. Complainant owned a large number of bonds as did Mr. Simmons. Receivership was threatened under foreclosure. Therefore an agreement was made on June 5, 1909 (pages 113, 114), that all the bondholders who could be persuaded should clip their coupons, thus enabling the company to use interest money for needed repairs, etc. This was equally beneficial to complainant and respondent. This agreement provided that, if the rehabilitation did not progress satisfactorily to the committee named, a foreclosure might be brought on by them. Respondent claims that Mr. McCanne induced him to consent to this, thereby depriving him of means to meet his indebtedness to complainant, upon the promise of postponing his indebtedness.

In the first place, it will be observed that on June 5, 1909, the date of the agreement, many defaults had taken place on the part of respondent. He was equally interested with complainant in the reconstruction of the property and the avoidance of foreclosure. Even with this security against foreclosure its avoidance was not assured. The testimony of Mr. Simmons was vague (pages 269, 350–354), and expressed his understanding as to extension rather than express language. His agreement (page 113) did not convey any such idea. His letters subsequently recognized that his entire indebtedness was due. If the additional bonds were deposited as claimed, then there was no need of extension. I am forced to find that no indulgence can be predicated on the clipping of the coupons.

### Bad Faith.

It is further claimed by respondent that complainant should not prevail in this suit because it interfered in bad faith with his sale of the telephone properties, thereby disabling him from paying his indebtedness.

The evidence totally fails to sustain this defense.

### Conclusion.

While there is conflict in the memories of witnesses on several points at issue, the situation and surrounding circumstances are with the complainant.

Beyond this, however, the master must report that every letter, agreement, and document in the case, signed by either party to this litigation, is in favor of complainant, and consistent only with its contentions. The claims of complainant are asserted in numerous letters to respondent, and nowhere is there a denial or dissent on his part.

I therefore recommend that complainant be granted, by appropriate decree, the relief prayed in its bill.

I recommend as follows:

The notes should be reformed so as to describe the bonds pledged as "gold mortgage bonds," instead of "first-mortgage bonds," and reformed further to provide that if respondent, C. J. Simmons, should default in any payment

either of interest or the annual reduction of the principal of said notes, tue whole obligation shall immediately become due and payable.

That respondent C. J. Simmons be decreed to pay forthwith to complainant the sum of $139,921.57 principal, with interest at 6 per cent. per annum from February 1, 1908, said decree to have the effect of a general judgment against respondent. By stipulation of complainant and respondent there are to be credited on the interest the sum of $6,562.50 of date August 1, 1911, and the further sum of $6,562.50 of date February 1, 1912.

That complainant has the right to immediate foreclosure against and sale of all the collateral securities held by it, and described in the pleadings in this case and that complainant has a special lien thereon to the amount of this decree.

Hardeman, Jones, Callaway & Johnston, of Macon, Ga., for complainant.

Anderson, Felder, Rountree & Wilson, and Robert C. & Philip H. Alston, all of Atlanta, Ga., for respondent.

NEWMAN, J. This case is now heard on exceptions to the report of the special master. The report shows the character of the case, the questions involved, and the facts necessary to an understanding of these questions without restating them.

[1] There are but two questions involved as the case now stands. The first question is the right of complainant to have a reformation of the notes given to it by the defendant Simmons and an accelerating clause added, which it is alleged it was the intention of both parties at the time the notes were made to embody in the same. The second is made by the contention of the defendant that this suit was prematurely brought. The master found against the defendant on both of these questions. As to the first question, that is the right of reformation, there can be no doubt of the duty of the court to confirm the report of the master. The issue was one largely of fact with some conflict in the evidence, and it can hardly be questioned, it seems to me, that there was evidence to sustain the master's report.

[2] The special master's finding, he having been selected by the parties and appointed by consent, is entitled to the weight of the verdict of a jury. The parties agreed on Mr. Slaton, an able lawyer, as special master, and the case was referred to him. In effect, I think the language of Mr. Justice Field, in Kimberly v. Arms, 129 U. S. 512, 9 Sup. Ct. 355, 32 L. Ed. 764, is applicable here. It is as follows:

"But when the parties consent to the reference of a case to a master or other officer to hear and decide all the issues therein, and report his findings, both of fact and law, and such reference is entered as a rule of court, the master is clothed with very different powers from those which he exercises upon ordinary references, without such consent: and his determinations are not subject to be set aside and disregarded at the mere discretion of the court. A reference by consent of parties of an entire case for the determination of all its issues, though not strictly a submission of the controversy to arbitration, a proceeding which is governed by special rules, is a submission of the controversy to a tribunal of the parties' own selection, to be governed in its conduct by the ordinary rules applicable to the administration of justice in tribunals established by law. Its findings, like those of an independent tribunal, are to be taken as presumptively cor-

rect, subject, indeed, to be reviewed under the reservation contained in the consent and order of the court, when there has been manifest error in the consideration given to the evidence, or in the application of the law, but not otherwise."

Even if it be not such a reference as there contemplated, error on the master's part must be plain and manifest.

The simple question was, Did the parties, by mutual mistake, omit the accelerating clause from the notes? And the master, after a full hearing of all the evidence which could throw light on the question, decided that they did. There is no legal ground for disturbing his finding.

[3] The conclusion of the master on the next question is stated by the master as follows:

"There are three deposits of bonds on which respondent claims an implied indulgence which would render the suit premature: $69,000 of bonds not covered by the contract of July 11, 1907, or the notes sued on, transferred as additional security to complainant on November 17, 1908 (see page 101 of the master's report of the evidence); $13,000 of bonds pledged in February, 1909 (see page 104 of the master's report of evidence); $6,000 of bonds transferred to complainant October 11, 1909 (see page 124 of the master's report of evidence). Doubtless the deposits were made with the hope of indulgence, and McCanne thought such was the hope of Simmons, but McCanne denies any promise of indulgence, and the express terms of the pledge exclude indulgence. In his brief respondent claims a right of indulgence for five years, but the deposit of bonds was followed up to the very date of the suit by letters from Mr. Simmons, admitting the right of the complainant to sue for the entire indebtedness and negativing the possibility of reliance by respondent on any indulgence. The very last deposit of $6,000 of bonds was for the purpose expressly of forcing an exchange of bonds, as provided by the agreement of July 11, 1907. I must hold that the deposit of bonds created, neither expressly nor impliedly, any right of indulgence or extension of time of payment."

The facts found by the master on this subject, as will be seen, are: (1) The three deposits of bonds, $69,000; $13,000 and $6,000, aggregating $88,000; (2) the further fact that Simmons made these deposits with the hope of indulgence by reason thereof; (3) that McCanne, acting for the complainant company, knew that Simmons hoped for such indulgence, but denied any promise of indulgence, and that the express terms of the pledge exclude indulgence; (4) and, finally, that letters written by Simmons, up to the very date of the suit, negative the possibility of his having relied on such indulgence.

This states succinctly the case made by the master's report, and I am satisfied that there is sufficient evidence to justify and sustain this finding. There was clearly no express agreement for an extension, and the master seems to be supported by evidence in finding that there was nothing from which an agreement to extend could be implied. Assuming that the master has found the facts correctly, under the law there would be no right to postponement. I do not discuss the numerous authorities cited pro and con, but they are quite fully collated in 7 Cyc. 894, 895. It may be proper to remark, however, that there was some indulgence of Mr. Simmons by the com-

plainant, because the last deposit of bonds was in October, 1909, and suit was not brought until May 17, 1910.

Very able and earnest arguments were made by both the counsel arguing this case for the defendant on this feature of the case, and I was very much impressed by them, and have consequently given the evidence and argument careful examination and much thought; but in any proper and reasonable view of the facts I am constrained to hold that the special master ·was justified in finding that there was no legal obligation, expressed or implied, on the part of the complainant to forbear suit at the time the suit was brought. What occurred in connection with the coupon-clipping agreement adds nothing to the right of the defendant in this respect, so far as I can see. I am compelled to overrule the exceptions to the master's report, and to confirm the same.

A decree of reformation will be entered in accordance with the master's report, and also a decree for the sum named therein, less the amount to be credited by reason of the recent receipt by complainant of interest, which, in a stipulation filed by it with the court, it is conceded amounts to $13,125.